UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALRELIO EVANS,

                              Plaintiff,                    Case No. 1:20-cv-833

v.                                                         Honorable Paul L. Maloney

KEVIN BRUGE et al.,

                              Defendants.
_____/

## OPINION

            This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

            Plaintiff is presently incarcerated with the Michigan Department of Corrections

(MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan.

The events about which he complains, however, occurred at the Earnest C. Brooks Correctional

Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.  Plaintiff sues the following LRF officials:   Residential Unit Manager Kevin Bruge; Psychologist Unknown Boland; and Correctional Officers Unknown Swanowicz, Unknown Tenhove, Unknown Sheggrud, and Unknown Otten.

Plaintiff alleges that, on July 25, 2019, Defendants Brege and Swanowicz denied him a shower after his yard period (a "half-time shower"), though some other LRF prisoners on other wings were allowed half-time showers.  Defendants Swanowicz and Tenhove also denied Plaintiff a half-time shower on July 31, 2019.  Plaintiff alleges that, when he complained, Defendants laughed at him as a means of degrading or belittling him.  Plaintiff alleges that Defendants Brege, Swanowicz, and Tenhove violated his rights under the Eighth Amendment and the Equal Protection Clause.

Plaintiff also alleges that, on August 2, 2019, Defendants Sheggrud and Otten delivered Plaintiff's snack bag.  The bag had peanut butter smeared on the inside of the bag and on the milk.  When Plaintiff complained, Defendant Sheggrud allegedly became hostile.  Correctional Officer Unknown Lewis (not a Defendant) calmed Plaintiff down, but, according to Plaintiff,

> it was clear that Sheggrud and Otten tampered with my food to punish me for filing grievances on their co-workers.  This led to my fear of eating anything in that unit.  I was later assaulted by unit officers and transferred to another prison for my safety.

(Compl., ECF No. 1, PageID.7.)  Plaintiff contends that Defendants' conduct violated the Eighth Amendment and was taken in retaliation for Plaintiff's filing of grievances and lawsuits against Defendants' co-workers.  Plaintiff complains that, as a result of the incident, he became afraid to eat, because he was paranoid about people tampering with his food.  The event also induced Plaintiff to go on a hunger strike again.

Plaintiff next contends that, on August 13, 2020, Defendant Psychologist Boland placed Plaintiff on suicide watch in a cold holding cell overnight, ostensibly because Plaintiff refused to speak with Defendant Boland and requested a different case worker.  Alternatively, Plaintiff alleges that Boland retaliated against Plaintiff for having filed past grievances and lawsuits, plotted with others to have Plaintiff killed, or tried to have Plaintiff committed or discredited.  Plaintiff acknowledges, in contrast, that Defendant Boland's decision to place Plaintiff on suicide watch was precipitated by Plaintiff going on another hunger strike.  Plaintiff nevertheless alleges that Defendant Boland's conduct constituted retaliation in violation of Plaintiff's First Amendment right to redress of grievances and his Eighth Amendment right to be free of cruel and usual punishment.

Plaintiff seeks declaratory and unspecified injunctive relief, together with compensatory, punitive, and nominal damages.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Right to Redress Grievances

Plaintiff alleges that Defendant Boland deprived him of his First Amendment right to pursue grievances. Plaintiff, however, alleges no specifics about how Defendant Boland—or any other Defendant—interfered with his ability to file grievances or pursue the grievance process. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

Moreover, even if Defendant Boland had taken action to interfere with Plaintiff's grievance process, prisoners have no protected right to file a grievance or successfully complete the grievance process, either under the First Amendment or the Due Process Clause. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective

prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Further, while the First Amendment's petition clause prevents a government from preventing a citizen from seeking redress of his grievances, "[a] prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied

5

access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

For all these reasons, Plaintiff fails to state a claim against Defendant Boland for interfering with his pursuit of grievances.

## IV.    Equal Protection

Plaintiff alleges that Defendants Brege, Swanowicz, and Tenhove denied his rights under the Equal Protection Clause by denying Plaintiff a shower after his yard exercise on two occasions a week apart.  Plaintiff alleges that at least some prisoners on other wings were allowed half-time showers.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).  In addition, prisoners do not have a fundamental right take a shower immediately after exercise yard.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any

6

combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").  An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").  To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460

(6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff alleges nothing more than that some prisoners on other wings of the facility received half-time showers on two days that he did not. Such allegations fall short of supporting an inference that those who were treated differently were similarly situated in all relevant respects. Plaintiff does not allege that the prisoners on other wings who received showers were subject to the same decisionmakers or that there were not mitigating or differentiating circumstances. *Id.*; *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013). Indeed, Plaintiff's allegations concerning other comparators are wholly conclusory. As discussed, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state an equal protection claim against Defendants Brege, Swanowicz, and Tenhove.

## V.     Eighth Amendment

Plaintiff alleges that Defendants Brege, Swanowicz, and Tenhove deprived him of his rights under the Eighth Amendment by denying him a shower on two occasions. He also contends that Defendants Sheggrud and Otten violated the Eighth Amendment by interfering with his snack bag, causing peanut butter to be smeared on the inside of his bag and on his milk. Plaintiff also infers, based on the single snack-bag incident, that Defendants were regularly interfering with his food. Finally, he asserts that Defendant Boland violated the Eighth Amendment when Boland placed Plaintiff on suicide watch, something that Plaintiff suggests was unsupported and could only have been done for retaliatory reasons.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is

9

the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### A. Denial of half-time showers

Plaintiff's allegations that that Defendants Brege, Swanowicz, and Tenhove denied him half-time showers on two dates, one week apart, fail to establish the objective component of the deliberate-indifference standard. The constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99–5323, 2000 WL 145167, at *2 (6th Cir. Feb.1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97B1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d

120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The refusal to allow a shower on two occasions, one week apart, constitutes a mere temporary inconvenience. *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (denial of soap and a shower for two days did not violate the Eighth Amendment *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (discussing deprivation of single shower); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff] for showers and gym time because [Plaintiff] was not at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment). Indeed, Plaintiff does not even allege that he was denied his routine showers, only that he was denied extra showers after exercising on two occasions. Plaintiff fails to state an Eighth Amendment claim based on the denial of two half-time showers.

### B.   Interference with snack bag

Plaintiff's allegation that Defendants Sheggrud and Otten interfered with his snack bag on a single occasion, causing peanut butter to be smeared inside, falls short of alleging an Eighth Amendment violation. "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). As discussed, however, the Constitution "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner

might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (holding that deprivation of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because the plaintiff did "not allege that his health suffered as a result of not receiving the meals."); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Plaintiff does not allege that his health suffered as a result of the deprivation of a single snack bag that was made messy or that the meals he did receive were inadequate to sustain his health.  Moreover, although Plaintiff contends that the single messy snack bag suggests that his food was regularly tampered with, such a contention is purely speculative, and does not support a plausible claim.  *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit a reasonably plausible inference of misconduct, rather than a "mere possibility" of misconduct).  Plaintiff therefore fails to state a claim based on the alleged interference with one snack bag.

### C.      Placement on suicide watch

Plaintiff alleges that Defendant Boland violated his rights under the Eighth Amendment by placing him on suicide watch overnight in a cold holding cell.  Plaintiff arguably alleges that Defendant Boland provided him inappropriate medical care and violated prison policy when placing him on suicide watch in response to his hunger strike.  Plaintiff also appears to allege that such a placement was, in itself, an Eighth Amendment violation.

To the extent that Plaintiff suggests that Defendant Boland violated prison policy by placing him on suicide watch because of his hunger strike, his allegation fails to implicate a constitutional concern.  Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

With respect to Plaintiff's claim that Defendant violated the Eighth Amendment by placing him on suicide watch for 36 hours, his claim falls short of demonstrating an Eighth Amendment violation.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  A

claim for the deprivation of adequate medical care, whether physical or mental, has an objective and a subjective component. *Farmer*, 511 U.S. at 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate or improper medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  Where a plaintiff has received some medical care, he must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, Plaintiff alleges that Defendant Boland wrongly concluded that Plaintiff needed to be placed on suicide watch.  Such an allegation amounts to a simple disagreement with Boland's medical determination and course of mental-health treatment.  Nothing about Defendant Boland's placement of Plaintiff on suicide watch for one night demonstrates deliberate indifference to Plaintiff's physical or mental health.

Moreover, even if the Court were to construe the placement on suicide watch as malicious, thereby meeting the subjective component of the Eighth Amendment standard, the deprivation Plaintiff alleges does not reach the threshold of objective seriousness sufficient to state a claim under the Eighth Amendment.  Although the Supreme Court has not discussed the unnecessary placement of a prisoner on suicide watch under the Eighth Amendment, the Court has held that placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir.

May 4, 1999).  Undoubtedly, Plaintiff was denied certain privileges and subjected to discomfort during the one night he was placed on suicide watch.  However, he does not allege or show that he was denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  For the same reasons, placement in a cold holding cell overnight for suicide observation falls short of establishing an Eighth Amendment claim.

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendant Boland.

### D.    Degrading and belittling Plaintiff

Plaintiff alleges that Defendants Swanowicz and Tenhove "laughed at [him] to degrade and belittle [him].  (Compl., ECF No. 1, PageID.8.)  Arguably, Plaintiff intends to allege that Defendants' degrading behavior violated the Eighth Amendment.

The courts routinely have held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct

16

every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Here, Plaintiff alleges only that Swanowicz and Tenhove laughed at him on one occasion, purportedly in an attempt to degrade him.  Such conduct, while not professional, falls short of even verbal harassment, conduct the courts routinely have found not to implicate the Eighth Amendment.  Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Swanowicz and Tenhove arising from their allegedly demeaning laughter.

## VI.    Retaliation

Plaintiff alleges that all of Defendants' conduct has been taken in retaliation for Plaintiff's exercise of his First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

17

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");  *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

With respect to Defendants Brege, Swanowicz, Tenhove, Sheggrud, and Otten, Plaintiff merely alleges that Defendants retaliated for Plaintiff having filed unspecified grievances and other lawsuits against Defendants' coworkers.  Such allegations are wholly conclusory. Plaintiff utterly fails to identify what grievances he filed, against whom, and when.  In addition, prior to the actions described in the instant complaint, Plaintiff's most recent lawsuit was filed in March 2017, and concluded in March 2019—four months before the conduct alleged here—and involved defendants from the Marquette Branch prison.  Moreover, Plaintiff's only other lawsuits against LRF officials are a case filed in November 2019, involving the warden and the chaplain of the facility, who allegedly interfered with Plaintiff's religious rights, *see Evans v. Washington et al.*, No. 1:19-cv-953 (W.D. Mich.), and a complaint filed in December 2019, in which he improperly joined the Defendants in this action, which addressed the subject matter at issue in this

complaint, *see Evans v. Brege et al.*, No. 1:19-cv-1083 (W.D. Mich.).[1]  The conduct alleged in the instant complaint preceded the filing of both of those actions.  In sum, nothing in Plaintiff's allegations or in the Court's records suggests any connection between prior grievances or lawsuits that could have motivated any Defendant to retaliate.

Accordingly, beyond alleging the ultimate fact of retaliation, Plaintiff has not presented any facts to support his conclusion that Defendants Brege, Swanowicz, Tenhove, Sheggrud, and Otten retaliated against him because he filed a grievance against some other, unnamed officer.  His speculative allegation against them therefore fails to state a retaliation claim.

With respect to Defendant Boland, Plaintiff's complaint lists five possible motivations for Boland's conduct:  retaliation for Plaintiff having filed grievances and lawsuits against coworkers (Compl., ECF No. 1, PageID.9); retaliation for Plaintiff having refused to talk to Boland and having requested a new case worker (*id.*, PageID.7); the fact that Plaintiff went on a hunger strike in response to receiving a snack bag that was smeared with peanut butter (*id.*, PageID.7, 9; Plaintiff's Declaration, ECF No. 1-5, PageID.63); "plotting with others to have [Plaintiff] killed" (*id.*); and "trying to have [Plaintiff] committed or discredited for some reason under false pretenses" (*id.*).  To the extent that Plaintiff alleges that Defendant Boland retaliated against him for his prior unspecified grievances and lawsuits, his claim fails for the reasons it fails against the other Defendants.  And although Plaintiff alleges that Defendant Boland retaliated when Plaintiff refused to talk to Boland and requested another case worker, his retaliation claim against Defendant Boland remains entirely speculative, given the four other possible motivations he offers for Boland's conduct.  This is particularly true, given that Plaintiff's declaration in

---

[1] Defendants Brege, Boland, Swanowicz, Tenhove, Sheggrud, and Otten were dropped from the action without prejudice, on the basis of misjoinder.  (1:19-cv-1083, ECF Nos. 5, 6.)

support of his complaint contains a single reason for Defendant Boland's action: "Defendant Boland placed me on suicide watch under false pretense because I wasn't eating. I did not engage in self-injurious behavior." (Pl.'s Declaration, ECF No. 1-5, PageID.63.) The allegation reflects a wholly legitimate basis for Defendant Boland's action—concern about Plaintiff's behavior of not eating, which could reasonably be construed as self-injurious.

Under these circumstances, Plaintiff's bare allegation that Defendant Boland placed him on suicide watch because of his protected conduct of asking for a new case worker is entirely speculative and amounts to a "bare allegation[] of malice," which is "not enough to establish [a] retaliation claim[]." *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001). Especially in light of the multiple alternative explanations for Defendant Boland's actions—offered by Plaintiff himself—Plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct," and Plaintiff has alleged – but it has not 'show[n]'"—that he is entitled to relief on his retaliation claim. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

For these reasons, Plaintiff's retaliation claims against Defendants Brege, Swanowicz, Tenhove, Sheggrud, Otten, and Boland fail to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in

good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   September 25, 2020                              /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge